**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **CASE NO. 2:21-CR-199** |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | |
| **KYLE A. VISINTAINER,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**OPINION & ORDER**</u>

This matter is before this Court on Defendant Kyle A. Visintainer's Motion to Suppress Evidence. (ECF No. 33). As requested by Defendant, this Court held a Suppression Hearing on March 28, 2022. (ECF No. 39). For the following reasons, Defendant's Motion is **DENIED**.

## I.  BACKGROUND

On January 8, 2021, state and local investigators were conducting a multi-jurisdiction investigation involving Defendant Kyle Visintainer, Rebecca Freeland, and other coconspirators allegedly involved in the distribution of narcotics in central Ohio. (ECF No. 1 at ¶ 6). As a part of this investigation, the investigators located a 2015 Nissan Rogue known to be regularly operated by Freeland, parked outside Defendant's residence. (*Id*.). On January 8, investigators observed Defendant, Freeland, and a third individual, later identified as Thomas Tripp III, leave the residence and enter the Nissan Rogue. (*Id*., ¶ 7). At that point, investigators observed Defendant place a dark-colored bag on the floorboard directly behind the driver's seat. (*Id*.). Investigators maintained surveillance on the vehicle as it left the residence. (*Id*.).

Sometime later, the vehicle pulled in front of Logan Police Department Officer, Devin Alford, who observed that the vehicle was not equipped with a functioning license plate light. (*Id*.).

1

At this point, at approximately 9:48 p.m., Officer Alford initiated a traffic stop on State Route 664 North and identified Defendant as the driver of the vehicle. (*Id*.). Upon hearing Alford's radio communication with Logan County Dispatch ("LCD") detailing the traffic stop, Logan Police Officer Trent Woodgeard arrived on scene to assist. (ECF No. 37 at 2).

After initiating this stop and identifying Defendant, LCD advised Officer Alford that Defendant had an active warrant out of the Franklin County Sheriff's Office. (ECF No. 1 at ¶ 8). Consequently, Officer Alford informed Defendant of the warrant and asked him to exit the vehicle. (*Id*.). Upon searching Defendant's person incident to arrest, Officer Woodgeard found two hypodermic syringes and a small wrapper containing a white powder[1] in Defendant's coat pocket. (*Id*.). After being advised of his Miranda rights, Defendant allegedly confirmed the drugs were fentanyl. (ECF No. 37 at 3).

Officer Alford then utilized his trained and certified drug detective canine to conduct a free air sniff of the vehicle. (ECF No. 1 at ¶ 9). When reaching the vehicle's front passenger door, Officer Alford advised his canine presented a positive alert, indicating a narcotic odor coming from the vehicle. (*Id*.; ECF No. 37 at 3). The Officers then directed the remaining occupants to step out of the vehicle and conducted a search of the vehicle. (*Id*., ¶ 9). Through that search, Officers located an unloaded handgun[2] under the front passenger seat. (*Id*., ¶ 10). Additionally, Officers discovered the dark-colored bag investigators observed Defendant place in the vehicle earlier, which contained: (1) digital scales with white powder residue; (2) approximately 100 grams of marijuana; (3) individual plastic baggies; and (4) a plastic bag containing suspected

---

[1] The white powder was later sent to the Ohio State Highway Patrol Crime Laboratory and was confirmed to be .44 grams of fentanyl. (ECF No. 1 at ¶ 8).
[2] The serial number of the handgun had been defaced and made unreadable by grinding off the numbers. (*Id*., ¶ 10).

methamphetamine.[3] (*Id.*). Finally, on the floorboard of the front passenger seat, Officers discovered a black purse which contained credit cards belonging to Freeland, three glass drug pipes, and $3,760.00 in U.S. currency. (*Id.*).

Based on this set of facts, on June 22, 2021, Magistrate Judge Jolson issued an arrest warrant for Defendant, which was returned executed that day. (ECF Nos. 2, 3). On June 25, 2021, Defendant, represented by counsel, waived his right to a detention hearing under 18 U.S.C. §3142 and agreed to be detained in the custody of the United States Marshal pending final resolution of his case. (ECF No. 19). On November 1, 2021, a properly convened grand jury charged Plaintiff on three counts: (1) Possession with Intent to Distribute 50 grams or more of Methamphetamine; (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and (3) Possession of a Firearm by a Prohibited Person. (*See* ECF No. 28). This case is currently set for trial on June 21, 2022. (ECF No. 40).

On February 25, 2022, Defendant filed the instant Motion, seeking to suppress all evidence, including all verbal statements, seized during the January 8, 2021, traffic stop. (*See* ECF No. 33). After being granted an extension, the Government timely responded on March 21, 2022. (ECF Nos. 35, 37). Defendant did not file a reply brief. This Court held a Suppression Hearing on March 28, 2022. (ECF No. 39).

## II.  LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. The Fourth Amendment requires law enforcement personnel to obtain a warrant, supported by probable cause, from a neutral and detached judicial officer, before searching people or their houses, papers, and effects for evidence of criminal wrongdoing. *Riley v.*

---

[3] The methamphetamine was later sent to the Ohio State Highway Patrol Crime Laboratory and was confirmed to be approximately 111.34 grams of methamphetamine, a Schedule II controlled substance. (ECF No. 1 at ¶ 10).

*California*, 134 S. Ct. 2473, 2482 (2014); *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). These requirements "guarantee[ ] the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their discretion." *See Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 613–14 (1989) (quotation omitted). Searches and seizures conducted without a warrant are presumptively unreasonable. *King*, 131 S. Ct. at 1856. Nevertheless, because "the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" the warrant requirement is subject to several exceptions. *Id*. (quotation omitted).

Defendants who seek to suppress evidence allegedly obtained in violation of the Fourth Amendment bear the burden of proof. *See, e.g., United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) ("It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." (quotation omitted)); *United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir. 1991) ("In the context of a motion to suppress, the moving party has the burden of establishing that the evidence was secured by an unlawful search."). The Sixth Circuit has made clear that this burden of proof extends to both "the burden of production and persuasion." *United States v. Patel*, 579 Fed. Appx. 449, 453 (6th Cir. 2014).

### III.  LAW & ANALYSIS

As a prefatory point, Defendant asserts he has sufficient standing to challenge the search and seizure at issue, as the stopping of a motor vehicle constitutes a seizure of both the driver and the other occupants of the vehicle. (*Id*. at 4 (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979))). The Government does not contest this point (*see generally* ECF No. 37) and, accordingly, this Court finds Defendant has standing to challenge this search and seizure.

## A. Defendant's Arguments

While Defendant accepts that his initial seizure and eventual arrest were pursuant to a properly executed arrest warrant, he asserts that the expansion of the initial encounter to include the use of a canine unit, is a bridge too far. (*Id*. at 5). He argues that because the arrest warrant did not authorize a search of his person or vehicle, that search and accompanying seizure are presumed unconstitutional, and the evidence recovered inadmissible. (*Id*. at 3). Defendant maintains that the Officers lacked a reasonable, articulable suspicion of ongoing criminal activity sufficient to allow them to search the vehicle after Defendant had been removed, arrested, and secured in police custody. (*Id*.). Moreover, Defendant argues that regardless of the impermissible expansion of the initial encounter to include a canine unit, that canine unit did not provide the Officers with probable cause sufficient to warrant a search of the vehicle and its contents. (ECF No. 33 at 5). Defendant contends that discovery proves this canine is unable to distinguish between legal and illegal substances, and therefore is improperly trained and unreliable. (*Id*. at 6). This is particularly significant, says Defendant, considering recent changes in the laws related to the possession of marijuana. (*Id*.).

## B. Government's Arguments

The Government, in response, maintains that Officer Alford stopped Defendant's vehicle based on a reasonable suspicion of a traffic violation—he observed no license plate light on the vehicle. (ECF No. 37 at 5). It asserts this constitutes probable cause for the traffic stop. (*Id*.). As probable cause existed, because Officer Alford observed the traffic ordinance violation, the Government asserts that any alleged pretext for the stop is immaterial. (*Id*. at 4 (citing *United States v. Whren*, 517 U.S. 806, 810 (1996))). Moreover, the Government argues Officer Alford was permitted to extend the initial encounter when, after determining Defendant had an

5

outstanding warrant, he patted him down and found suspected narcotics, which Defendant identified as fentanyl. (*Id*. at 3, 5). Once this occurred, the Government contends probable cause existed to run a certified narcotics detection dog on the vehicle and to recover the contraband located therein. (*Id*. at 6). Regarding the reliability of the canine detective, the Government represents there is no evidence this dog is not properly trained or reliable. (*Id*.). These arguments aside, the Government maintains that before searching the vehicle, Officer Alford knew Defendant was going to be arrested for an outstanding warrant and would have lawfully impounded the vehicle and conducted an inventory search as required by department policy. (*Id*.). Accordingly, says the Government, the "inevitable discovery" doctrine applies, and the seized evidence is admissible. (*Id*. (citing *United States v. Johnson*, 22 F.3d 674, 684 (6th Cir. 1994))).

### C.  Court's Analysis

As a threshold matter, this Court finds Officer Alford had sufficient probable cause for the initial traffic stop, as he observed Defendant violate a civil traffic ordinance. (ECF No. 1 at ¶ 8). Supreme Court precedent on this question is abundantly clear: "an officer who has probable cause to believe a civil traffic violation has occurred may generally stop the vehicle regardless of his or her subjective motivation for doing so." *See Whren v. United States*, 517 U.S. 806 (1996); *see also Delaware v. Prouse*, 440 U.S. 648 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977). Alford had probable cause to stop the vehicle because it was not equipped with a functioning license plate light, in violation of Ohio law. Ohio Rev. Code Ann. § 4513.05 (West). For this reason, Defendant's allegation that this stop was only because he was a suspect in an unrelated drug investigation, is immaterial. *Whren v. United States*, 517 U.S. 806, 811–813 (1996) (recognizing that the Supreme Court has "repeatedly" held that an officer's subjective motivation does not invalidate objectively justifiable behavior under the Fourth Amendment).

With the constitutionality of the initial traffic stop established, this Court further finds that the evidence gathered from the vehicle was properly seized, in compliance with the Fourth Amendment. There are two, independent bases for this conclusion.

First, as Defendant concedes, his initial seizure and eventual arrest were pursuant to a valid arrest warrant from Franklin County, Ohio. (*See* ECF No. 33 at 5). Given this lawful arrest, Officer Alford was permitted to conduct a search of Defendant's person as well as the area within his immediate control. *United States v. Robinson*, 414 U.S. 218, 224 (1973) (recognizing that, under Supreme Court precedent, a search may be made of the person of the arrestee, and of the area within the control of the arrestee, by virtue of a lawful arrest). While the latter of these two propositions has been subject to different interpretations, "[t]he validity of the search of a person incident to a lawful arrest has been regarded as settled from its first enunciation[.]" *Id.* Accordingly, the contraband found on Defendant's person—two hypodermic syringes and a wrapper containing a white powder—was validly seized and will not be suppressed.[4]

Defendant argues Officer Alford impermissibly expanded this search when he utilized the drug detective canine to conduct a free air sniff of the vehicle. (ECF No. 33 at 5). Whether Officer Alford was entitled to utilize the detective canine—he likely was—is immaterial. Officers Alford and Woodgeard had sufficient probable cause to search the vehicle given the contraband validly seized from Defendant's person, pursuant to the automobile exception. *See California v. Carney*, 471 U.S. 386, 392–93 (1985); *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012) ("Under the automobile exception to the warrant requirement, an officer may perform a warrantless search

---

[4] Regarding Defendant's statements, particularly identifying the contraband found in his pocket as fentanyl, this Court finds they too, will not be suppressed. As detailed in the Government's response, and as verified by Officer Alford's dashcam footage, Defendant was fully Mirandized and then chose to waive those rights and volunteer the information. *See Miranda v. Arizona*, 384 U.S. 436, 478 (1966) (establishing that statements made freely and voluntary, without compulsion, are not barred by the Fifth Amendment and are admissible).

of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity."). As probable cause existed, the extension of the initial encounter beyond the time needed to complete the traffic stop was permissible. *See United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). The extension of the initial encounter to include a canine unit and a subsequent search of Defendant's vehicle was, therefore, supported by probable cause considering the contraband found during a search incident to a valid arrest.

Second, the evidence will not be barred because, even without probable cause, it falls under an exception to the suppression remedy—the inevitable discovery exception. Under this doctrine, "if the circumstances are such that the evidence would have been found in any inventory search that inevitably followed seizure of a car, the evidence [can] be introduced. *Johnson*, 22 F.3d at 684. That is precisely what occurred here. As there was a valid arrest warrant, and the Officers found contraband on Defendant's person during the search incident to arrest, Defendant's vehicle would have been lawfully impounded, following which the Officers would have discovered the remaining evidence. Accordingly, even were this evidence unconstitutionally seized—this Court finds it was not—it is admissible as it would have been inevitably discovered by lawful means. *Id*.

Defendant's argument on the training and reliability of the canine detective are unhelpful. First, this Court has already found probable cause existed independent from the canine detective's open-air sniff. (*See supra* at 7–8). Second, neither in his Motion nor at the hearing, did Defendant produce any evidence which would show the unreliability or unsuitability of this canine detective. *Patel*, 579 Fed. Appx. at 453 (on a motion to suppress, the defendant has both "the burden of production and persuasion"). The Government, meanwhile, offered evidence showing that Officer Alford and his canine partner has received certifications from both state and national training programs. And, precedent dictates that "[t]here is probable cause to justify a warrantless search of

8

a vehicle once a properly trained and reliable drug detection dog alerts positively to the presence of drugs." *Hill*, 195 F.3d at 273. Further, federal courts have generally rejected arguments that state legalization of medical marijuana eliminates any probable cause gained from a trained and certified drug detection dog's alert. *United States v. Hayes*, No. 3:19-CR-73-TAV-HBG, 2020 WL 4034309, * 20 (E.D. Tenn. Feb. 21, 2020), report and recommendation adopted, 458 F. Supp. 3d 857 (E.D. Tenn. 2020) (highlighting that state laws legalizing marijuana, medically or otherwise, do not preempt federal law).

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, Defendant's Motion (ECF No. 33) is **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: April 5, 2022**